FOURTH DIVISION

March 31, 2005 

No. 1-03-3038

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of 

Plaintiff-Appellee, ) Cook County.

) 

v. ) No. 96 CR 265

)

ENOCH WILDER, ) Honorable

) Lawrence P. Fox,

Defendant-Appellant. ) Judge Presiding.

JUSTICE GREIMAN delivered the opinion of the court:

Defendant Enoch Wilder appeals from an order of the circuit court dismissing his 
pro se 
petition for postconviction relief.
 
For the reasons that follow, we affirm.

Defendant was initially convicted of first degree murder, armed robbery, and aggravated kidnaping and sentenced to 45 years’ imprisonment for murder and 15 years each for armed robbery and aggravated kidnaping
, the latter two sentences to run concurrently to each other and consecutive to the former.  At trial, several witnesses testified that a group of men participated in the robbery of a garage and the related murder of Robbie Barrett.  Defendant was apprehended during the investigation of a separate offense and confessed to his involvement in the robbery and murder.  

On direct appeal, defendant sought reversal arguing that evidence of his gang membership was improperly admitted at trial, that the trial court prejudiced him when it failed to grant him a continuance in order to obtain civilian clothing during jury selection, and that the trial court improperly imposed consecutive sentences under section 5-8-4(b) of the Unified Code of Corrections.  730 ILCS 5/5-8-4(b) (West 1998).  This court affirmed defendant’s convictions, finding that evidence of defendant’s gang membership was not improper and that the trial court was not required to grant a continuance for him to obtain a change of clothes.  However, we vacated defendant’s consecutive sentences, finding that section 5-8-4(b) was unconstitutional, and ordered that all three of his sentences were to run concurrently.  
People v. Wilder
, 321 Ill. App. 3d 608 (2001), 
appeal denied and judgment vacated by 
People v. Wilder
, 195 Ill. 2d 596 (2001) .   On appeal, the Illinois Supreme Court reversed and ordered that we reconsider our judgment in light of its holding in 
People v. Wagener
, 196 Ill. 2d 269 (2001) (holding section 5-8-4(b) constitutional)
.  On remand, this court affirmed defendant’s convictions, but vacated the trial court’s imposition of consecutive sentences and remanded for further proceedings as to the factual circumstances surrounding the commission of the offenses for which defendant was convicted.  
People v. Wilder
, 325 Ill. App. 3d 987 (2001).  On remand, the trial court ordered that all three of defendant’s sentences were to run concurrently.  

In March 2003, defendant filed the instant postconviction petition, alleging that his arrest for an unrelated offense and which ultimately led to his confession was unlawful; that the prosecutor misstated evidence during closing arguments; that the jury was not given proper instructions; that his trial and appellate counsel failed to preserve the jury instructions as an issue for appeal; that one of the State’s witnesses testified falsely; that the trial court improperly admitted an ammunition cartridge that was not connected to defendant or the offenses for which he was prosecuted; that his conviction for aggravated kidnaping was improper because it was incidental to the armed robbery; that the trial court improperly admitted evidence of defendant’s gang affiliation as well as evidence of other crimes; that his confession was coerced; that his trial attorney was ineffective; that his confession was insufficient as evidence to sustain his convictions; and that his appellate counsel failed to advise him of his appellate rights following his direct appeal.  

Defendant based several of his claims on this court’s decision concerning the appeal of one of his codefendants, Fredeal Truidallie, where, in an unpublished order, we found that the gang membership evidence introduced at trial concerned other individuals involved in the offense rather than Truidallie, that other evidence was not properly admitted, and, in 
dicta
, that the circumstances surrounding the offense did not appear to satisfy the elements necessary for a guilty finding on aggravated kidnaping.  
People v. Truidallie
, No. 1-99-3679 (2001) (unpublished order under Supreme Court Rule 23).  For those and several other reasons, we reversed Truidallie’s convictions and remanded for a new trial.  On remand, Truidallie was convicted of murder and armed robbery.  

The trial court summarily dismissed defendant’s petition as frivolous and patently without merit, finding that the issue of admitting evidence of defendant’s gang membership at trial had already been raised and considered on direct appeal and was therefore barred under 
res judicata
.  The court also pointed out that Truidallie had been tried separately from defendant and that the gang evidence admitted against him concerned other individuals implicated in the offense, not Truidallie himself.  The court further found that the issues of the ammunition and defendant’s conviction for aggravated kidnaping could have and should have been raised on direct appeal and therefore were subject to waiver; that the propriety of his arrest and the admissibility of his statement had been addressed during trial and could have been addressed on direct appeal; that the allegations of misstatements by the prosecutor and jury instructions lacked any factual support and legal authority; that his allegation of false testimony by a State witness lacked factual support; that other evidence adduced at trial was sufficient to support his convictions; and that defendant’s appellate counsel was not ineffective for failing to raise every issue defendant had raised in a motion for new trial.  Defendant now appeals.

The Post-Conviction Hearing Act (Act) provides defendants with a means of challenging their convictions or sentences for violations of their constitutional rights that could not have been raised on direct appeal.  725 ILCS 5/122-1 
et seq
. (West 2002).  The Act establishes a three-stage process for adjudication of a postconviction petition.  At the first stage, the trial court determines whether the defendant’s allegations sufficiently demonstrate a constitutional violation that would necessitate relief, and it may summarily dismiss the petition upon finding that it is frivolous and patently without merit.  
People v. Coleman
, 183 Ill. 2d 366, 380 (1998); 725 ILCS 5/122-2.1(a)(2) (West 2002).  All well-pled allegations are to be taken as true and liberally construed, unless contradicted by the record.  
Coleman
, 183 Ill. 2d at 381-82.  A petition is considered frivolous and patently without merit where its allegations fail to present the gist of a meritorious constitutional claim.  
People v. Edwards
, 197 Ill. 2d 239, 244 (2001).  This court reviews the summary dismissal of a petition for postconviction relief 
de novo
.  
Coleman
, 183 Ill. 2d at 388-89.  

On appeal, defendant initially contends that the trial court erred in summarily dismissing his petition where it contained the gist of several meritorious constitutional claims, arguing that this court recognized similar errors in reversing codefendant Truidallie’s convictions.  First, he argues that his appellate counsel was ineffective for failing to raise the issue of his conviction for aggravated kidnaping, especially given our disposition of a similar contention in Truidaillie’s appeal, and that appellate counsel was ineffective for not raising the issue of his trial counsel’s failure to introduce police reports concerning the identification of the van used in the robbery.  He also contends that the trial court erred in dismissing several of his claims on the grounds of waiver and 
res judicata
, arguing that procedural grounds may not serve as the basis for summary dismissal of postconviction claims. 

We first address the procedural aspects of defendant’s appeal.  A postconviction action is a collateral attack on a prior conviction and sentence, and the scope of such a proceeding is generally limited to constitutional matters that have not been, or could not have been, previously adjudicated.  
People v. Rissley
, 206 Ill. 2d 403, 411-12 (2003).  Any issues raised in a postconviction petition that could have been raised on direct appeal, but were not, are procedurally defaulted.  
Rissley
, 206 Ill. 2d at 412.  There exists a split of authority within our own appellate district as to the ability of trial courts to summarily dismiss postconviction petitions on purely procedural bases.  While all divisions concur with and follow our supreme court’s holding in 
People v. Boclair
, 202 Ill. 2d 89 (2002), that untimeliness may not serve as the sole basis for the summary dismissal of a postconviction petition, some divisions have ruled that postconviction claims may be subject to both waiver and 
res judicata
, while others have held that petitions may be summarily dismissed on the basis of 
res judicata 
but not on the basis of waiver.

The third division has held that, in general, a trial court may not summarily dismiss a postconviction petition on solely procedural bases, such as untimeliness, waiver, or 
res judicata
.  
People v. McGhee
, 337 Ill. App. 3d 992 (2003); 
People v. Blair
, 338 Ill. App. 3d 429 (2003), 
appeal allowed
, No. 96198 (October 7, 2003).  In 
McGhee
, the panel extended the ruling in 
Boclair
 to hold that procedural bars do not address the question of whether the claims contained in a postconviction petition are frivolous or patently without merit, but only bar the hearing of claims regardless of their substantive merit.  
McGhee
, 337 Ill. App. 3d at 995.   The same division followed that holding in 
Blair
, reversing the trial court’s summary dismissal of a postconviction petition solely on the finding that the defendant’s claims were barred by waiver and 
res judicata
.  
Blair
, 338 Ill. App. 3d at 432.  

Conversely, the first division has distinguished the issue of timeliness from those of waiver and 
res judicata
, reasoning that the latter two bars, although procedural constructs, are also substantive considerations in that they define and limit the substantive scope and purpose of the Act.  
People v. Smith
, 345 Ill. App. 3d 868 (2004).  The 
Smith
 panel concluded that the issue of waiver 
does indeed address the substantive merits of a postconviction petition, stating, "[t]he substantive scope and purpose of the Act does not include providing for the retrial of issues previously decided or that could have been raised and decided at an earlier time,” and that circuit courts may summarily dismiss a petition on the basis of waiver.  
Smith
, 345 Ill. App. 3d at 871.  
Cf.
 
People v. Johnson
, 352 Ill. App. 3d 442 (2004).  

Similarly, this division declined to follow the holdings of 
McGhee
 and 
Blair
, finding that the issue of timeliness is distinct from both waiver and 
res judicata
, and that the latter two deal with the substance of postconviction claims and may serve as the basis for summary dismissal.  
People v. Jefferson
, 345 Ill. App. 3d 60, 70 (2003).  

The sixth division took a different course in 
People v. Etherly
, 344 Ill. App. 3d 599 (2003), where it held that 
res judicata 
could provide the basis for summary dismissal of a postconviction petition, but waiver could not.  That panel reasoned that dismissal on the basis of 
res judicata 
is proper where the trial court does not have to engage in any fact finding and it is apparent from the record that the issue raised was in fact previously adjudicated, whereas waiver would involve consideration of matters outside the record and thus could only lead to dismissal at the second stage of postconviction proceedings.  
Etherly
, 344 Ill. App. 3d at 614-15.  

This division has not changed its stance with regard to the procedural bars to postconviction claims since we issued our decision in 
Jefferson
.  Accordingly, we will not hesitate to apply procedural bars in circumscribing the claims available to defendant in his pursuit of postconviction review.  

Defendant contends on appeal, 
inter alia
, that his constitutional rights were violated when evidence of his gang membership, specifically the mention of his nickname "Big Murder,” was admitted at trial.  As stated above, this court has twice considered this issue on direct appeal and twice determined that evidence of defendant’s gang membership was properly admitted where it made evident the existence of a gang hierarchy, in that one of defendant’s associates directed the commission of the offense and defendant acted in compliance with that direction, establishing his motive for participating in the crime.  
Wilder
, 321 Ill. App. 3d at 615; 
Wilder
, 325 Ill. App. 3d at 993.  Obviously, this issue has already been raised and decided on direct appeal and is thus barred under the doctrine of 
res judicata
, and we therefore conclude that the trial court properly dismissed the claim on that basis.

Defendant argues that the issue remains viable in light of our decision concerning the appeal of his codefendant Truidallie, where we found that evidence of gang affiliation was improperly admitted where it pertained to several co-offenders but not directly to Truidallie, and therefore, that its probative value was outweighed by its prejudicial value.  
Truidallie
, slip op. at 12.  He also contends that the co-offender, whose orders the State alleged he was following, was in fact not his superior and exercised no control over his actions.  

We first remind defendant that unpublished Rule 23 orders are not precedential and may not be cited by parties except to support contentions of double jeopardy, 
res judicata
, collateral estoppel, or law of the case.  166 Ill. 2d R. 23(e).  Furthermore, in the Truidallie decision, issued the same day as our most recent decision concerning the immediate defendant, we were careful to distinguish the circumstances of each case, pointing out that each defendant was tried separately and that the prosecution in defendant’s trial specifically alleged his own gang affiliation as a means of establishing motive.  We did not decide defendant’s appeal unconscious of our differing conclusion in his co-defendant’s appeal, and we see no need for this or any other court to revisit the issue a third time.  Furthermore, one of the deciding justices in defendant’s last appeal did in fact address the admission of his nickname "Big Murder,” and found that even if the admission was erroneous, it was harmless in light of the "overwhelming” evidence against defendant.  
Wilder
, 325 Ill. App. 3d at 1004-05 (Theis, J., specially concurring).  Moreover, defendant’s new allegation that his co-offender was not his superior is contradicted by his own statement admitted at trial.  Accordingly, we find that defendant’s claim of a constitutional violation in this instance is frivolous and patently without merit.

In light of the fact that this court has already issued two appellate decisions concerning the propriety of defendant’s trial, and in keeping with our holding in 
Jefferson
, we find that his  remaining claims concerning  the admission of ammunition evidence at his trial, the sufficiency of the evidence to sustain his convictions, and ineffective assistance of trial counsel could have and should have been raised on direct appeal and are thus waived for purposes of postconviction consideration.  However, defendant attributes his failure to raise these issues on direct appeal to ineffective assistance of appellate counsel.  Waiver is generally inapplicable where it is attributable to the incompetence of appellate counsel.  
People v. Peeples
, 205 Ill. 2d 480, 510 (2002).  

In order to demonstrate ineffective assistance of appellate counsel, a defendant must allege facts showing that the failure to raise an issue or issues on appeal was objectively unreasonable and that counsel’s decision prejudiced the defendant.  
People v. Flores
, 153 Ill. 2d 264, 283 (1992).  Appellate counsel is not required to brief every conceivable issue on appeal, and it is not incompetence for counsel to refrain from raising issues that he or she believes are without merit.  
People v. Johnson
, 154 Ill. 2d 227, 236 (1993).  A defendant suffers no prejudice if the underlying issues are nonmeritorious.  
People v. Rogers
, 197 Ill. 2d 216, 223 (2001).  In order to establish that appellate counsel was deficient, the defendant must demonstrate that his allegation of ineffective trial counsel was meritorious and that this court would have found as such had appellate counsel raised the issue on direct appeal.  
People v. Patterson
, 192 Ill. 2d 93, 112 (2000).   

Defendant initially contends that his appellate counsel was ineffective for failing to raise the issue of the admission of a bullet cartridge at trial.  He argues that the admission into evidence of an assault rifle cartridge that was found at the apartment of two of his associates and that bore a resemblance and identical stamp to the casing of the bullet believed to have killed Barrett was plain error because the State never showed any connection between the bullet and defendant.  He also argues that the prosecutor’s comment on the bullet in closing arguments was prejudicial.  In support, defendant cites to our decision concerning Truidallie’s appeal, where we reversed his convictions after we concluded that the bullet admitted at that trial bore only a negligible connection to Truidallie.  
Truidallie
, slip op. at 11.  

We again remind defendant that unpublished Rule 23 orders are not to be cited as precedent (166 Ill. 2d R. 23(e)) and that his codefendant Truidallie was tried separately.  In defendant’s trial, defense counsel sought to exclude the bullet arguing that it bore no connection to defendant.  In presenting its case, the State relied on defendant’s statement, in which he implicated Truidallie and four other individuals, and related that the group had used an AK-47, a sawed-off shotgun, and a .44-caliber revolver to perpetrate the robbery and that one of his accomplices had shot Barrett using the AK-47.  Two of the co-offenders were subsequently arrested and their apartment was searched.  Officers recovered a bullet casing that was the same type of ammunition and bore a stamp identical to the bullet that was recovered from the scene of Barrett’s murder.  Defense counsel argued that the co-offenders had later been released and were never charged with the offense for which defendant was being prosecuted, and he contended that the bullet found in their apartment bore no connection to defendant.  The trial court allowed the bullet into evidence, finding that the discovery of the bullet corroborated defendant’s statement and that the differing circumstances of his own arrest and those of his co-offenders were not relevant.

We do not see how the trial court’s decision to allow the bullet into evidence was erroneous or how it prejudiced defendant.  Defendant stated to police and an assistant State’s Attorney that he and the individuals he implicated had planned and perpetrated the robbery of the garage and the related murder of Barrett.  Several witnesses testified that one of the offenders was a very large man who wore a Chicago Bears jacket; defendant at the time of his arrest weighed nearly 450 pounds and often did wear a Bears jacket, which one of the witnesses identified at the time of his arrest.  The ammunition recovered from the co-offenders’ apartment matched the ammunition from the murder weapon.  In light of the overwhelming evidence against defendant, we conclude that his appellate counsel was not deficient in neglecting to raise this issue on direct appeal and that defendant suffered no prejudice as a result.

Defendant also contends that the prosecution’s reference to the bullet in closing arguments was prejudicial and constituted reversible error.  Prosecutors are granted rather broad latitude in giving closing arguments and may comment on the evidence to draw all legitimate inferences therefrom.  
People v. Jackson
, 293 Ill. App. 3d 1009, 1016 (1997).   When a defendant challenges comments made in rebuttal, courts will not deem them improper if they were invited by defense counsel’s own argument.  
Jackson
, 293 Ill. App. 3d at 1016.  

Here, the prosecutor mentioned the bullet as a means of substantiating defendant’s statement in response to defense counsel’s arguments that the statement was coerced and was therefore unreliable.  In rebuttal, the prosecutor referred to the bullet and showed it to the jury, pointing out that it was identical in size and bore an identical numerical stamp to the bullet fired from the murder weapon.  The prosecutor emphasized that defendant implicated the co-offenders and that investigating officers subsequently discovered a bullet matching the one used to kill Barrett in their apartment.  His comment centered on evidence presented at trial, drew a logical inference from its admission, and was obviously invited by defense counsel’s contention that defendant’s statement was unreliable.  Accordingly, we find that the prosecutor’s comment was not prejudicial and that appellate counsel was not remiss in failing to address it on direct appeal.  

Defendant next contends that his counsel on appeal was ineffective for failing to challenge the sufficiency of the evidence to sustain his conviction for aggravated kidnaping, and in doing so, relies exclusively on our decision concerning the appeal of Truidallie, who specifically raised that issue in a separate appeal following a separate trial.  We again remind defendant that unpublished Rule 23 orders are not to be cited as precedent.  166 Ill. 2d R. 23(e).  We also note that this court did not reverse Truidallie’s convictions on the basis that defendant alleges but, rather, commented on the evidence not to reach an actual determination but "only to apprise the trial court of our impressions.”  
Truidallie
, slip op. at 25.  

A defendant commits the offense of kidnaping where he knowingly and secretly confines a person against his will (720 ILCS 5/10-1(a)(1) (West 2002)), carries a person from one place to another by force or threat of force with the intent to secretly confine him against his will (720 ILCS 5/10-1(a)(2) (West 2002)), or deceives or entices a person to go from one place to another with the intent to secretly confine him against his will (720 ILCS 5/10-1(a)(3) (West 2002)).  

The Criminal Code of 1961 provides that a defendant commits aggravated kidnaping where he does so for the purpose of obtaining a ransom (720 ILCS 5/10-2(a)(1) (West 2002)); where the victim is under 13 years of age or mentally disabled (720 ILCS 5/10-2(a)(2) (West 2002)); where the kidnaper inflicts great bodily harm, by means other than a firearm, or commits another felony upon the victim (720 ILCS 5/10-2(a)(3) (West 2002)); where the kidnaper wears a mask or hood to conceal his identity (720 ILCS 5/10-2(a)(4) (West 2002)); where the kidnaper commits the offense using a dangerous weapon, other than a firearm (720 ILCS 5/10-2(a)(5) (West 2002)); where the kidnaper commits the offense while armed with a firearm (720 ILCS 5/10-2(a)(6) (West 2002)); where the kidnaper personally discharges a firearm during the commission of the offense (720 ILCS 5/10-2(a)(7) (West 2002)); or where the kidnaper personally discharges a firearm, causing great bodily harm, permanent disability, permanent disfigurement, or death to another person (720 ILCS 5/10-2(a)(8) (West 2002)).  We note that portions of this latter section relating to enhanced sentences have been found unconstitutional by our supreme court in 
People v. Moss
, 206 Ill. 2d 503, 537-38 (2003).  

In Illinois, where the detention or asportation of a victim is incidental to another offense, a separate conviction for kidnaping cannot be sustained unless four factors weigh in favor of a guilty finding.  
People v. Lamkey
, 240 Ill. App. 3d 435, 439-40 (1992).  The factors courts consider to determine whether a detention or asportation amounted to a kidnaping are: (1) the duration of the detention or asportation; (2) whether the detention or asportation occurred during the commission of a separate offense; (3) whether the detention or asportation was inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense.  
Lamkey
, 240 Ill. App. 3d at 439-40. 

Both defendant’s and Truidallie’s convictions for aggravated kidnaping were based on the testimony of two of the robbery victims, who stated that they saw the robbers usher Robbie Barrett into the garage, rob him, and shoot him after a brief struggle. Truidallie had also made statements that he was one of the robbers, that he had spotted Barrett near the garage while the robbery was taking place, and that one of his accomplices ordered defendant to escort Barrett into the garage, where another accomplice shot him.  In Truidallie’s appeal, we remarked that it appeared that two of the four 
Lamkey
 factors were not adequately satisfied, in that the asportation of the victim was only for a very short time and a very short distance, and it did not appear to create a significant danger to him independent of the danger posed by the armed robbery. 
 We stated that we believed the shooting of Barrett occurred as part of his resistance to the robbery and was more closely related to that event than to the asportation.  However, we qualified those remarks by stating that "such a determination [was] not ours to make.”  
Truidallie
, slip op. at. 25.

We will not make a different determination in this instance.  This court has already affirmed defendant’s conviction for aggravated kidnaping on two occasions.  When considering the sufficiency of the evidence to support a conviction, reviewing courts use a standard very deferential to the trier of fact, and we cannot state with certainty that no rational trier of fact, in this case the jury, could have found defendant guilty of aggravated kidnaping beyond a reasonable doubt.  See 
People v. Brown
, 169 Ill. 2d 132, 152 (1996).  Accordingly, we cannot conclude that defendant’s appellate counsel was deficient for failing to raise this issue on direct appeal or that defendant suffered prejudice as a result.

Defendant lastly contends that he was deprived of effective assistance of trial counsel where his attorney failed to discover and introduce police reports stating that tire impressions found near the scene of the robbery did not match the tires on the vehicle used by the offenders and that a witness identified a different vehicle.  

At trial, the robbery victims testified that they saw the perpetrators approach the garage driving a tan van with a broken ladder on its rear door, exit the van carrying several weapons, order them inside, and rob them of their cash and drugs.  Another witness heard a gunshot from the direction of the garage and saw the van, which he thought he recognized as belonging to an acquaintance.  Another witness testified that he had employed Truidallie in his car repair shop and entrusted his 1985 Ford van to Truidallie for repairs in October 1995, and that he was not in possession of the van on the night the robbery and murder occurred.  Another witness testified that he had seen Truidallie driving the van and that he removed the battery from it in hopes of getting Truidallie’s attention.

The prosecution presented photographs of two different tan vans for witnesses to identify at trial.  One of the victims identified one van as that driven by the perpetrators (People’s exhibit  No. 7), while another witness identified the other as the one he saw driving away from the garage (People’s exhibit No. 5).  The owner of the van identified the former photograph ( No. 5) as the van that he had entrusted to Truidallie and noted that it had a broken ladder.

At Truidallie’s trial, the parties stipulated that a detective had interviewed one of the eyewitnesses who viewed a tan van seized by police and stated that the van looked similar to the one driven by the perpetrators, but the van was not the one believed to have been in Truidallie’s possession at the time of the robbery.  The parties also stipulated to a report that a comparison had been made between the tires on the testifying witness’s van and the tire impressions found near the scene of the robbery and that the impressions did not match.  No other evidence indicated that the van in Truidallie’s possession was the one used in the commission of the crime.  
Truidallie
, slip op. at 16-17.  On appeal, this court found error where the prosecutor admonished the jury that it could not consider the facts gleaned from the reports and the trial court did not sustain defense counsel’s objection, leaving the impression that jurors were not to consider them.  Truidallie, slip op. at 20.  

Defendant argues that his trial attorney was ineffective for failing to introduce similar evidence at his own trial and that his appellate counsel was equally ineffective for failing to raise this as an instance of ineffective assistance of trial counsel on direct appeal.  We disagree.

While police reports may be used for impeachment purposes but not as substantive evidence (
People v. Shief
, 312 Ill. App. 3d 673, 680 (2000)), the parties at defendant’s trial never stipulated to those police reports, the prosecution directly questioned witnesses, and two of them identified the van that was believed to have been in Truidallie’s possession on the night of the robbery.  Moreover, witnesses identified defendant himself as one of the perpetrators and the jury heard his statement in which he admitted to his involvement in the offense.  We fail to see how the use of these reports would have undermined the witnesses’ in-court testimony or defendant’s statement and otherwise led to an acquittal.  Accordingly, we find that defendant was not prejudiced by such an omission and that his claim of ineffective assistance of trial counsel is without merit.

For the reasons set forth above, we uphold the trial court’s dismissal of defendant’s petition for postconviction relief.

Affirmed.

THEIS, J., concurs.

REID, P.J., dissenting:

In this matter, the trial judge dismissed Wilder’s petition as frivolous and patently without merit.  Specifically, the trial judge determined that several of the defendant’s allegations were barred by waiver and 
res judicata
.  I do not agree with this ruling.

Furthermore, I do not agree with the majority that a post-conviction petition can or should be summarily dismissed at the first stage on the basis if waiver.  The majority acknowledges that there is a split within our appellate district on this issue.  The majority relies on and follows the decision that this court reached in 
People v. Jefferson
, 345 Ill. App. 3d 60, 70 (2003), where the court determined that waiver and 
res judicata 
could serve as the basis for the summary dismissal of a post-conviction petition at its first stage.  

Instead, I believe that 
People v. Etherly
, 344 Ill. App. 3d 599 (2003) is the route that this district should follow.  In 
Etherly
 this court determined that 
only
 
res judicata
, in certain instances, could serve as a basis for the summary dismissal of a post-conviction petition at its first stage.

A post-conviction petition is meant to allow defendants who have suffered a constitutional deprivation to receive another bite at the apple.  Here, the majority, because of procedural concerns, would allow a petitioner who has otherwise pled legitimate allegations concerning constitutional deprivations to not be given his day in court.  I find this to be unjust and unfair.  As such, I dissent.